UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CURTIS E. MAIN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 3:20-CV-684 JD |

**OPINION AND ORDER**

**A.    Factual Background**

In September 2017, Mr. Main applied for a period of disability and disability insurance benefits, claiming that, by May 2017, he had become unable to work due to his health conditions. (R. 181.) He primarily alleged that he was disabled due to degenerative disk disease, atrial fibrillation, tendinitis of the shoulders, and a pancreatic cyst. (R. 202.)

On September 4, 2019, after reviewing Mr. Main's medical records and listening to his testimony, the ALJ found that he was not disabled. (R. 26.) The ALJ determined that Mr. Main suffers from two severe impairments: cervical degenerative disc disease and an umbilical hernia. (R. 18.) However, the ALJ found that Mr. Main's alleged degenerative shoulder joint disease, lumbar degenerative disc disease, atrial fibrillation, and mental impairments were all non-severe. (R. 19–21.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22.) After reviewing the record and listening to Mr. Main at the hearing, the ALJ concluded that he had the residual functional capacity for medium work as defined in 20 C.F.R § 404.1567(c),

except for the following limitations: "[H]e can occasionally climb ladders, ropes or scaffolds; frequently climb, balance, stoop, kneel, crouch, and crawl; frequent but not constant bilateral reaching, which includes overhead, forward and to the side." (R. 22.) Determining that Mr. Main could perform past relevant work as a component assembler and general laborer, the ALJ found that Mr. Main was not disabled. (R. 25–26.) Mr. Main requested a review by the Appeals Council, which was denied on June 12, 2020 (R. 1), thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**B.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539

(7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ also must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.     Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed

disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Mr. Main argues that the ALJ's decision should be remanded for several reasons. First, he argues that the ALJ's credibility analysis was flawed because the ALJ cherry-picked evidence. (DE 16 at 2.) Second, he argues that the ALJ erred at Step 3 by not considering medical equivalency. (*Id.* at 9.) Third, he argues that the RFC was not supported because it lacked an accurate and logical bridge. (*Id.* at 13.) Fourth, he argues that the ultimate decision was unsupported. (*Id.* at 24.) The Court believes Mr. Main's most convincing argument is that the ALJ erred in conducting its credibility analysis. Since this argument is the most persuasive, the Court will not address the remaining arguments, which will either be moot or can be addressed on remand.

Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)). But when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). When making their credibility determination, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p).[1] Additionally, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id.*; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

The process for evaluating a claimant's symptoms is organized around two major steps. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(a)-(b). Second, after the claimant satisfies the first step,

---

[1] SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version the outcome in this case would be the same.

the ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. 20 C.F.R. § 404.1529(c). In evaluating allegations of pain, adjudicators are directed to consider whether the symptoms are "consistent with the objective medical [evidence] and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016); *see also* 20 C.F.R. § 404.1529(a) (explaining that the agency considers both "objective medical evidence and other evidence" in evaluating whether an impairment affects activities of daily living and the ability to work). Objective medical evidence is merely one factor to be considered, and an ALJ is not free to "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). Other factors that the ALJ should look at include "daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1529(c)(2)-(4)).

In this case, the ALJ found that Mr. Main's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his allegations of "intensity, persistence, and limiting effects were not entirely credible." (R. 23.) In finding that his allegations were not credible, the ALJ first relied on objective medical evidence. He believed that the "mild findings from imaging [and] generally mild objective findings from physical examinations" contradicted Mr. Main's "extreme allegations of debilitating upper back pain and deficits from an umbilical hernia." (R. 23.) The ALJ also relied on Mr. Main's "conservative medical treatment history," which the ALJ believed was "inconsistent with his allegations of

debilitating upper back pain and deficits from an umbilical hernia." (R. at 24.) The ALJ noted there was "indication in the record that the claimant had a loss of health insurance," but that "even if the claimant did have a lapse in insurance, he could have sought treatment at free or subsidized clinics," and the ALJ found "no indication in the record that the claimant [sought] treatment with such providers." (R. 24.) The ALJ also found that Mr. Main's "high functioning activities of daily living," such as managing medications, preparing meals, cleaning, driving, shopping for groceries, managing money, watching television, organizing meetings, mowing the lawn, snow blowing, caring for pets, and socializing, "undermine[d] the persuasiveness of his allegations of disabling functional limitations." (R. 24.)

Mr. Main asserts that the ALJ erred in this credibility analysis for three reasons. First, Mr. Main argues that the ALJ's finding that his treatment was "conservative" is not supported by the record because there is evidence that he went to the ER for his hernia symptoms, was scheduled for surgical hernia repair, and that he required numerous tests. (DE 16 at 2–3.) Second, Mr. Main asserts that even if he had a conservative treatment history, the ALJ should not have relied on that history because it resulted from Mr. Main's financial constraints. (DE 16 at 4–5.) Third, Mr. Main argues that the ALJ's use of his activities to undermine his credibility was improper because the analysis did not address the qualifications on how he performed those activities. (DE 16 at 6.) The Court agrees that the ALJ's credibility analysis was flawed.

(1) *Conservative Treatment History*

The ALJ did not properly consider Mr. Main's reasons for having a conservative treatment history. Failure to seek medical treatment in the face of claimed illness can be a factor in evaluating credibility. *See Schaaf v. Astru*e, 602 F.3d 869, 876 (7th Cir. 2010); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Nonetheless an ALJ "'must not draw any

7

inferences' about a claimant's condition from [his failure to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft*, 539 F.3d at 679. "ALJs have a duty to consider factors like inability to travel, mental illness, or *economic constraints* that may have prevented claimants from seeking or receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013) (emphasis added) (citing *Godbey v. Apfel*, 238 F.3d 803, 809 (7th Cir. 2000).

The ALJ dismissed Mr. Main's explanation that economic constraints limited his ability to seek treatment because he could have sought treatment at a "free clinic or subsidized clinic." (R. 24.) However, merely asserting a claimant could have received care at an unidentified "free clinic" does not contradict a claim of being unable to receive treatment due to economic condition. *See Bodo v. Berryhill*, No. 2:17-CV-27-JEM, 2018 WL 1391870, at *4 (N.D. Ind. Mar. 20, 2018) (finding that dismissal of claimant's allegation she could not afford treatment on the basis there were 'free medical services' and 'less expensive treatment methods' was improper because the ALJ did not actually identify those services and methods); *see also Lopez v. Astrue*, 807 F. Supp. 2d 750, 757 (N.D. Ill. 2011) (finding that the ALJ properly weighed conservative treatment history where the ALJ "noted that [the claimant] knew about programs that provided free medical care and that [the claimant] had no difficulty seeking medical care in connection with [prior medical procedures]").

The record contains numerous references to Mr. Main having problems with his insurance, which resulted in him being unable to schedule tests (R. 65, 320–23, 673, and 691), and being unable to see doctors. (R. 638–42, 653.) Because the only reason the ALJ gave for discounting Mr. Main's insurance issues was that he "could have sought treatment at free or subsidized clinics," the ALJ erred in finding this factor weighed against his credibility. If the

ALJ were to make such a finding, further explanation, such as identifying the free clinics Mr. Main could have gone to as well as the treatments they could have provided, would be necessary.

### (2)  Daily Activities

The ALJ also erred when he determined that Mr. Main's daily activities were inconsistent with his allegations of pain, without considering the full context of that evidence. The Seventh Circuit has criticized decisions which do not examine the "critical differences" between activities of daily living and activities in a full-time job. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). "Without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ [is] not entitled to use [the claimant's] performance of life activities as a basis to determine that [his] claims of a disabling condition [are] not credible." *Ghiselli v. Colvin*, 837 F.3d 771, 777–78 (7th Cir. 2016).

Here, the ALJ listed a number of daily activities he believed cut against Mr. Main's allegations:

> [T]he claimant alleged debilitating upper back pain and an umbilical hernia. Yet, he performs personal care independently, manages his medications independently, prepares meals, cleans, drives, shops for groceries, manages money, watches television, plays games on his phone, organizes meetings, mows the lawn, snow blows, cares for his pets, and socializes without difficulty (Exhibits 6E, 9F). The claimant's ability to participate in such activities undermines the persuasiveness of his allegations of disabling functional limitations.

(R. 24.) First, the ALJ erred by not acknowledging the difference between the demands of performing the above activities and performing a full-time job. Some of the above activities the ALJ relied on are particularly troubling. For example, it's unclear to the Court why Mr. Main's ability to watch television, play games on his phone, and manage money undermine the persuasiveness of his claim of debilitating back pain and umbilical hernia. If there is such an explanation, the ALJ should have provided it. However, even the other daily activities that might

undercut the persuasiveness of Mr. Main's claims should have been tempered with an explanation. The Seventh Circuit has explained that "the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer." *Bjornson*, 671 F.3d at 647; *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (observing that "[w]e have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate to an ability to work full-time"). The record indicates that the ALJ did not examine the critical differences between Mr. Main's performance of daily activities and his performance of a full-time job, constituting error.

The ALJ also erred by ignoring Mr. Main's numerous qualifications on how he performed those daily activities. An ALJ may not "ignore an entire line of evidence contrary to her ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (finding that it was improper for the ALJ to cite claimant's ability "to use a chainsaw, mow the lawn, and care for his child" but ignore "his testimony about the pain and fatigue these activities cause him and his limitations with them"). The ALJ asserts the above daily activities were performed "without difficulty." However, the record contains many qualifications on how Mr. Main performed those activities. For example, while Mr. Main does mow the lawn, various portions of the record indicate that when he does, he does not use a push mower, has to take breaks, and is in pain for days afterwards. (R. 60, 223.) The ALJ found that Mr. Main does his personal care independently, but various portions of the record indicate that he has difficulty putting his clothes on (R. 56, 222, and 543), that taking a shower is painful (R. 58), and that he can no longer tie his shoes. (R. 72.) The ALJ cited to how Mr. Main cooks for himself, but does not examine the portions of the

record that indicate Mr. Main has to take frequent breaks when doing so and will cook while sitting in a chair. (R. 77, 223.) The ALJ's discussion of daily activities was therefore improper because he failed to consider the numerous qualifications on Mr. Main's daily activities. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citations omitted) ("an ALJ cannot disregard a claimant's limitations in performing household activities"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (emphasis in original) ("The ALJ ignored Craft's qualifications as to how he carried out those activities . . . Each activity left him exhausted.").

Particularly troubling is how frequently the ALJ relied on Mr. Main's daily activities when discounting his allegations of pain. The ALJ ends multiple paragraphs with nearly identical sentences. For example, the ALJ finishes one paragraph by writing:

> The claimant's ability to participate in activities such as driving, performing household chores, mowing the lawn and snow blowing, undermines the persuasiveness of his allegations of disabling functional limitations.

(R. 25.) Then, the ALJ concludes the very next paragraph by writing:

> Lastly, the claimant's ability to participate in activities such as driving, performing household chores, mowing the lawn and snow blowing, undermines the persuasiveness of his allegations of disabling functional limitations.

(R. 25.) If the ALJ had critically examined these activities at any point, or examined the various qualifications Mr. Main had when performing them, then such repetition might not be a problem. However, as discussed above, the ALJ never conducted such an examination.

The ALJ's credibility determination in this case is patently wrong because at least two of the ALJ's three reasons for discrediting Mr. Main were invalid. The ALJ's analysis of Mr. Main's conservative treatment history was invalid because he did not sufficiently explore Mr. Main's explanations as to the lack of medical care. Additionally, the ALJ's analysis of Mr. Main's daily activities erred because he failed to acknowledge the difference between

11

performing daily activities and going to work full-time, and also failed to consider the qualifications on those activities. Courts have found credibility determinations to be patently wrong in similar circumstances. *See Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *16 (N.D. Ill. May 14, 2021) (finding that an ALJ's credibility determination was patently wrong where at least two reasons for discrediting the claimant were invalid).

### (3)  Harmless Error

The Court finds that the ALJ erred in its credibility determination. This error is not harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support . . . ." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). If the ALJ had attributed more weight to Mr. Main's testimony regarding his pain, as well as the various statements he made about that pain throughout the record, then it is possible the ALJ would have found a more restrictive RFC for Mr. Main, one that would have disqualified him from performing his past work as a component assembler and general laborer. This possibility was played out by the responses the vocational expert gave to the hypotheticals asked by the ALJ and Mr. Main's counsel. The ALJ asked whether someone with a medium exertion level, but with posturals rated as frequent (for example, frequent reaching) would be able to perform his past work. (R. 80.) The vocational expert responded that Mr. Main would be able to return to his past work as a component assembler, installer, and general laborer as generally performed. (*Id.*) However, if Mr. Main was limited to occasional reaching, the vocational expert responded that he would not be able to return to those past jobs as generally performed. (R. 81.) If the ALJ had properly considered Mr. Main's daily activities and his conservative treatment history, the ALJ may have found that Mr.

Main was not capable of performing his past work. Given the ALJ's repeated reference to a flawed analysis of Mr. Main's daily activities, the Court does not have great confidence that the agency would reinstate its decision on remand. Therefore, the ALJ's error is not harmless, and remand is warranted.

On remand, the ALJ must reassess Mr. Main's allegations regarding the intensity, persistence, and limiting effects of his symptoms, taking care to avoid cherry-picking the record and exaggerating Mr. Main's daily activities. Additionally, the ALJ must reassess Mr. Main's treatment history and examine the economic constraints that may have prevented him from getting treatment.

### E.     Conclusion

On the basis of the foregoing, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 29, 2021

      /s/ JON E. DEGUILIO
Chief Judge
United States District Court